UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

DALE FREEMAN,

        Plaintiff,                        Case No. 2:18-cv-68

v.                                                          Honorable Robert J. Jonker

JENNIFER HEADLEY et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez,* 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants McLean and Spitters.

**Discussion**

    I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County,

Michigan. The events about which he complains, however, occurred at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan, and the Earnest C. Brooks Correctional Facility, (LRF) in Muskegon Heights, Muskegon County, Michigan. Plaintiff sues Nurse Jennifer Headley, Nurse Supervisor Bethany Staine, Nurse Tiffany Haske, Nurse Practitioner Brenda Buchanan, Michael Brown, Nurse Theresa Merling, Physician Daniel Spitters, Physician Bienvenido Canlas, Dr. Ricky Coleman, and Grievance Coordinator M. McLean.

Plaintiff alleges that he is a paraplegic who requires a special medical air mattress to prevent decubitus pressure ulcers and urinary catheters to drain his bladder and prevent urinary tract infections. On March 26, 2015, Plaintiff was transferred to LRF, where he was examined by Defendant Spitters. Defendant Spitters ordered a special accommodation for Plaintiff to receive a special air mattress. The accommodation was for the duration of one year, and was to expire on May 13, 2016. Plaintiff states that Defendant Spitters failed to renew the accommodation, which resulted in the mattress being confiscated as contraband.

On June 7, 2017, Plaintiff was transferred to URF, where Plaintiff received a medical screening by LPN Cicco. Defendant Merling subsequently provided Plaintiff with an air mattress and catheters, despite the fact that Plaintiff's mattress detail had expired. Defendant Canlas reviewed Plaintiff's medical screening on June 9, 2017, but failed to renew Plaintiff's medical accommodation for an air mattress. Plaintiff spoke to Defendant Merling and asked her to provide him with an accommodation for an air mattress and catheters. In early July of 2017, Plaintiff submitted a kite, which was responded to by Defendant Haske. On July 4, 2017, Plaintiff received a mattress exchange from Defendant Brown. On August 14, 2017, Plaintiff submitted a kite for another mattress because his air mattress had a hole in it. Plaintiff received a replacement mattress on August 18, 2017. At this time, Plaintiff was unaware of the fact that he did not have

an accommodation for a special mattress. On September 11, 2017, while Plaintiff was in segregation at URF, Defendant Headley confiscated Plaintiff's mattress and catheters. Plaintiff wrote a kite, stating that he needed the mattress and catheters in order to avoid bed sores and urinary tract infections. Plaintiff also wrote a grievance on Defendant Headley.

On September 13, 2017, Plaintiff required treatment with an antibiotic for a urinary tract infection. Plaintiff was referred to Defendant Canlas on September 14, 2017, who then referred Plaintiff's case to Defendant Coleman with regard to Plaintiff's need for an air mattress. Defendant Coleman deferred the request. On September 19, 2017, Plaintiff awoke with severe pain in his left leg and discovered decubitus pressure ulcers. Plaintiff attempted to inform Defendant Staine while she was making her medication rounds, to no avail. Plaintiff wrote a kite and was seen by Defendant Brown, who told Plaintiff that the sores were no big deal and gave him a bandaid. Plaintiff asked Defendant Brown to take pictures of the sores, but he refused.

On September 25, 2017, Plaintiff's decubitus ulcers had gotten worse and he was seen by Defendant Buchanan. Plaintiff was then sent to War Memorial Hospital and was given intravenous antibiotics. Plaintiff remained in the hospital for three days. After being released from the hospital, Plaintiff was seen by Defendant Buchanan on September 29, 2017. Plaintiff explained that he was in pain, but Defendant Buchanan asserted that Plaintiff had purposely caused the decubitus ulcers and ignored his complaints. On September 30, 2017, Plaintiff was readmitted into the hospital due to a worsening of his bed sores. Plaintiff was given antibiotics and a protective dressing for decubitus ulcers on his hip and knee. Plaintiff was instructed to change the dressings daily. After returning to URF, Defendant Buchanan stated that Plaintiff only needed dressing changes every other day for three to five days.

Plaintiff's decubitus ulcers continued to worsen and became infected. On October 16, 2017, Plaintiff's sores produced such a bad odor that Defendants Staine, Headley, and Haske had to run a fan during dressing changes in order to avoid gagging. On October 17, 2017, Plaintiff requested extra showers because of the drainage from his decubitus ulcers. Defendant Buchanan denied Plaintiff's request. Plaintiff was readmitted to the hospital on October 19, 2017. On October 20, Defendant Headley discovered that Plaintiff had a different type of infection based on lab results from the October 19 hospitalization. Plaintiff suffered an extremely high fever and was hospitalized again on October 30, 2017. At this point, Plaintiff's infection required that he be admitted to the infirmary for intravenous antibiotic treatment. Plaintiff was told by Dr. Tann that if the infection in his left leg was untreated, he was at risk of requiring an amputation.

In December of 2017, Plaintiff was referred to a plastic surgeon for surgery on his left hip and knee. On December 30, 2017, Plaintiff was admitted into the hospital with severe fever. Plaintiff subsequently underwent surgery for the debridement of his left knee and shin bone biopsy at Henry Ford Allegiance Hospital January 4, 2018. Plaintiff received ongoing antibiotic therapy, but his wound reopened. On January 18, 2018, Plaintiff wrote several letters complaining about the medical care he received, describing the grievances he had filed, and complaining of Defendant McLean's failure to investigate Plaintiff's grievances.

Plaintiff claims that Defendants' conduct violated his rights Eighth Amendment. Plaintiff seeks damages and injunctive relief.

II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While

a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff fails to make specific factual allegations against Defendant McLean, other than his claim that he failed to conduct an investigation in response to his grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant McLean engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against him.

Plaintiff alleges that Defendant Spitters did not renew Plaintiff's air mattress accommodation, which ultimately resulted in Plaintiff's air mattress being deemed contraband and being confiscated. However, during the time that Plaintiff was at LRF under the treatment of Defendant Spitters, he continued to have access to an air mattress and did not suffer any ill effects as a result of Defendant Spitters' failure to renew the accommodation. Therefore, Plaintiff's Eighth Amendment claim against Defendant Spitters is properly dismissed.

The Court notes that Plaintiff's claims against Defendants Headley, Staine, Haske, Buchanan, Brown, Merling, Canlas, and Coleman are not clearly frivolous and may not be dismissed on initial review.

**<u>Conclusion</u>**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants McLean and Spitters will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

An order consistent with this opinion will be entered.


Dated:   October 24, 2018             /s/ Robert J. Jonker
                                                  ROBERT J. JONKER
                                                  CHIEF UNITED STATES DISTRICT JUDGE